In the Matter of the Estate of DAISIE G. GAUBERT, Deceased.

Surrogate's Court, Kings County, October 4, 1937.

*C. Herbert Vonhof,* for William Austin Moore, as executor, etc., and also as trustee.

*Connolly & Frey,* for the Chase National Bank of the City of New York, one of the trustees.

*Rutherford S. Moorhead,* for the Imperial Council of the Ancient Arabic Order of Nobles of the Mystic Shrine of North America, remainderman, objectant.

WINGATE, S. Whereas the unusual nature of the question here presented renders it somewhat improbable that an exact parallel

will ever again arise, its legal and factual components possess so many interesting features that somewhat more than passing consideration is due them.

The decedent died in Kings county in 1934 leaving a will, which, except for specific bequests of personal belongings, gave her entire estate in trust to pay the income to her mother for life, and upon the death of the latter to erect a secondary trust for the life of May Emma Hollis from $10,000 of its principal. The portion of the principal unnecessary for use in the latter connection and the remainder of the secondary trust was given to the "Imperial Council of the Ancient Arabic Order Nobles of the Mystic Shrine of North America for its work among crippled children."

At the date of death the gross estate aggregated $69,757.19 in value and consisted of $52,257.19 assets attributable to this State and a parcel of real property located in the State of Pennsylvania which was valued in the tax proceeding at $17,500.

Subsequent to the death of the testatrix, the mother instituted a construction proceeding for a determination as to the validity of the charitable gifts under section 17 of the Decedent Estate Law, which resulted in a decision (*Matter of Gaubert*, 158 Misc. 444) that as of the date of death the testatrix had attempted to give to charity more than the half of her gross estate less debts which is permissible in the face of objection under the New York statute, and that by reason of its terms the charitable gifts could be validated to the extent of $34,600.82 only.

Shortly after this decision was made, the mother and primary life beneficiary died. Until a date subsequent to her death, the trustees, although accorded a discretionary power of sale under the terms of the will, had retained the Pennsylvania realty pursuant to an express testamentary authorization in this regard, but subsequent thereto sold it for the net sum of $20,800.70 without prejudice to any rights which the charity might have possessed, had such sale not been made. In other words, for all purposes pertinent to the solution of the present problem, the situation of the trust principal is precisely the same as if the Pennsylvania real property were still in the hands of the trustees.

It has been demonstrated in the present case that Pennsylvania has no statute at all similar to section 17 of the Decedent Estate Law in the State of New York, wherefore had the testatrix been domiciled there, the totality of the gifts to the charity would have been effective.

Even in the State of New York, the testamentary gift to charity, as written, was not void, as is clearly pointed out by Judge KNIGHT in *Millard* v. *Humphrey* (8 F. Supp. 784, 788), but merely voidable,

depending on whether or not some individual enumerated in the statute chose to initiate a proceeding requisite for the purpose of subverting the clearly indicated testamentary wish of the decedent. (*Matter of Rosenberg*, 164 Misc. 837. See, also, *Amherst College* v. *Ritch*, 151 N. Y. 282, 334.)

As is stated in effect in the last cited case, the New York statute is merely an expression of the policy of this State that its laws and legal processes shall not be invoked in the face of authorized objection to divert from natural kin, to charitable or other similar uses, in excess of one-half of the property owned by a decedent at the time of his death. As is demonstrated by the determination in *Decker* v. *Vreeland* (220 N. Y. 326) this policy applies to non-resident as well as resident testators, in spite of the fact that its effectuation may at times come perilously close to infringing upon the right of a sister State to regulate the manner of devolution of property having a permanent situs within its confines or belonging to one of its own citizens, in apparent violation of the primary rules that the disposition of realty is to be determined in accordance with the laws of its situs (*United States* v. *Fox*, 94 U. S. 315, 320; *Warburton* v. *White*, 176 id. 484, 496; *Tyler* v. *United States*, 281 id. 497, 501; *Decker* v. *Vreeland*, 220 N. Y. 326, 336) and of personalty by those of the domicile of the owner. (*Guillander* v. *Howell*, 35 N. Y. 657, 661; *Petersen* v. *Chemical Bank*, 32 id. 21, 44; *Daby* v. *Ericsson*, 45 id. 786, 789, 790; *Dammert* v. *Osborn*, 140 id. 30, 39.)

It is believed, however, that an intelligent application of the spirit of the law should avoid infringement of diverse foreign policy whenever reasonably possible.

All which the New York statute requires is that the charitable gifts shall not exceed one-half of the gross estate, less debts, *valued as of the date of death*. Furthermore, when a will makes a specific devise to a charity, such devisee will be entitled to receive the land in question (provided its value does not exceed half of the estate) at the value which it possessed at the date of the death of the testator and the solution of this benefit is to be preferred to general legacies to itself or other charitable beneficiaries if an abatement is necessary in the total of charitable gifts made, by reason of the fact that their aggregate value exceeds one-half of the estate. (*Matter of Ham,* 123 Misc. 889, 894; affd., as to this point, 213 App. Div. 487; affd., 242 N. Y. 536; *Matter of Johnston*, 76 Misc. 391, 394.)

In the opinion of this court the situation actually disclosed herein, disregarding for the moment the feature of the second life interest in $10,000 of the principal, is substantially identical with that of such specific devise. With the exclusion of the secondary life

estate in the stated portion of the principal sum, the testatrix gave her entire estate to her trustees for the life use of her mother with remainder absolutely to the charity. There was no equitable conversion of the realty since the power of sale was discretionary and not mandatory and consequently under the law of this State, with which, in the absence of contrary indication, Pennsylvania laws will be presumed to agree (*Hynes* v. *McDermott*, 82 N. Y. 41, 48; *McCulloch* v. *Norwood*, 58 id. 562, 567; *Harris* v. *White*, 81 id. 532, 544; *Matter of Sitkin*, 151 Misc. 448, 453; *Matter of Shuff*, Id. 754, 756), no conversion will be deemed to have taken place until actual sale occurred. (*Scholle* v. *Scholle*, 113 N. Y. 261, 270; *Matter of Tatum*, 169 id. 514, 518; *Matter of Seymour*, 209 App. Div. 655, 657, 658; affd., as to this point, 239 N. Y. 259, 264; *Matter of Bingham*, 127 id. 296, 314; *Thompson* v. *Hart*, 58 App. Div. 439, 448; affd., 169 N. Y. 571; *Matter of Sloat*, 141 Misc. 710, 714.) Under the agreement that the sale should not alter the rights of the charity, the situation is the same as if the realty were still in the possession of the accountant.

Viewing the matter from the Pennsylvania aspect, therefore, there is a gift of the entire remainder, including the real property, to the charity *nominatim*. On well-established principles its estate became vested as of the moment of death. (*Matter of Gardner*, 140 N. Y. 122, 129; *Matter of Young*, 145 id. 535, 537, 538; *Matter of Traver*, 161 id. 54, 57; *Roosa* v. *Harrington*, 171 id. 341, 353; *McLean* v. *McLean*, 207 id. 365, 375; *Matter of Lamb*, 182 App. Div. 180, 186; affd., 224 N. Y. 577; *Carr* v. *Smith*, 25 App. Div. 214, 216; affd., 161 N. Y. 636; *Matter of Soy*, 143 Misc. 217, 221; *Matter of Perlmutter*, 156 id. 571, 573, 574; *Matter of Stutzer*, Id. 684, 686, 687; *Matter of Meyer*, 162 id. 426, 428.) This vested interest in the specific rem of the realty was, of course, subject to divestment by the exercise in good faith by the trustees of their discretionary power of sale prior to the arrival of the time when the charity was entitled to receive its gift in possession, but it was otherwise absolute and unconditional, and since this divesting condition did not occur and is now impossible of occurrence, its title has now become absolute.

This is the manner of devolution of the realty which would be prescribed by the laws of Pennsylvania within whose confines it was located, and which should control unless it be demonstrated that their effectuation by the courts of this State would contravene some principle of local public policy.

No such infringement has been demonstrated. The sole pertinent statute is section 17 which provides only that the charity shall not receive more than one-half of the gross estate less debts valued as

of the date of death of the testatrix. It is unconcerned with the identity of the particular estate assets which are to be used in solving this permissible gift.

The question remains for consideration as to whether the composite situation is altered by reason of the testamentary direction that $10,000 of the original principal should be erected into a secondary trust upon the death of the primary *cestui que trust.* This question is properly solvable in accordance with the intent of the testatrix if ascertainable from the terms of the will. She directed that $10,000 be used for this purpose. The assets in cash and readily marketable securities in the hands of the accountants on the death of the primary life beneficiary far exceeded this amount. It seems reasonable to suppose that the testatrix intended that such cash and securities should be the primary source for the solution of this benefit, not only on the language of the will itself, but by analogy to the principle that a general gift in a will is payable from personalty in exoneration of a residuary or remainder gift of realty. (*Lupton* v. *Lupton,* 2 Johns. Ch. 614, 623; *Bevan* v. *Cooper,* 72 N. Y. 317, 322; *Hoes* v. *Van Hoesen,* 1 id. 120, 122; *Hindman* v. *Haurand,* 2 App. Div. 146; affd., 159 N. Y. 546; *Brill* v. *Wright,* 112 id. 129, 134; *Schnorr* v. *Schroeder,* 45 Hun, 148, 149; *Matter of Lloyd,* 166 App. Div. 1, 7; *Matter of Tuozzolo,* 141 Misc. 251, 252.)

The terms of the will are clear to the effect that subject only to the needs of the first life beneficiary, the testatrix desired that the charity should receive this parcel of Pennsylvania realty. The laws of the situs which govern the manner of its devolution would unquestionably effect this desire and there is nothing in the policy or laws of the State of New York which would be offended by permitting and enforcing such a result.

The court accordingly determines that the charity is entitled to receive this Pennsylvania realty, or the money now segregated to take its place, in partial solution of the testamentary gift as reduced pursuant to section 17 of the Decedent Estate Law at the value which it was determined to have at the date of death of the testatrix.

Enter decree on notice in conformity herewith.